Good morning, Your Honors. May it please the Court. My hope today would be to convince the Court that my case is like Luna v. Cambrath. First and probably foremost, like Luna, our case has no State findings to which we have to defer. We have only a summary denial. So we don't really know how the State applied Strickland, whether they found there was – I've read this record, as much as I presented this in the excerpts of the record, but there's one thing I couldn't quite get a handle on. At the trial, was there actually an alibi defense presented? No defense was presented at all other than argument. So – but the claim – the way it's presented in the briefs to us and to the District Court, it's as though an alibi defense had been presented, but it just wasn't adequate. No, Chief, they called no witnesses. There was argument of – So the real claim is that – is that basically Cervantes' only possible defense, or one of the – I don't know if it's the only possible defense, but a defense that – Yes. Either he wanted to present, he – his lawyer didn't do it. Exactly. The defense was available to him that – that he was at home asleep. Several witnesses would have placed him at home. It took up – two of them were his relatives. Now, suppose – you know, we know that from the notes of the lawyer, we know that the lawyer, as investigator, contacted the mother and the sister and learned what they were told. Yes. He was aware of that. Now, suppose that the lawyer said – thought, well, you know, I just – this isn't going to be credible. They're not going to be credible. I – you know, I'm not going to put on an alibi defense. It would have been better than nothing. Well, but let me ask you – Given this evidence. Is that a reasonable thing for a lawyer to do? No, it's not reasonable when there isn't any other defense presented. The only thing that might make it – I mean, you know, the respondent says maybe she didn't believe them. Well, I mean, you know, a mother's – a mother's testimony is always somewhat unimpeachable by the fact that you're the mother. Now, I know there are others who were allegedly there that night who – There were, one of whom we presented a declaration. She only talked to – well, no, she didn't talk to any of the – any of the – She did, and she talked only to the mom and sister. But we did have the declaration from one of the ones that we found. He did talk with another witness. The clock house's investigator talked with another witness, who for some reason they never called, who I think would have been really helpful, too, Mr. Gomez. The point is that Cervantes wanted to present an alibi defense. Well, Cervantes – Or is it that she should have recognized that there was an alibi defense and should have presented the alibi defense? I think she should have – well, she knew there was an alibi defense because his mother told him – told her and told me about it. Well, the lawyer interviewed the witnesses, right? Yes. So she knew that the mother said that. Did you talk to that lawyer? Do you know why the lawyer didn't present? I have talked to the lawyer. I mean, without a subpoena in an evidentiary hearing, most lawyers won't do too much talking. I mean, I can represent to this court that I did try to talk. But unless we – we were never granted an evidentiary hearing in state court when we filed our – You really don't know, one, if there was a reason, and if there were, what it was. I can't imagine a reason. But, I mean, I suppose there could conceivably have been one. I mean, maybe the mother had 20 felonies. But even so, it's still better than no defense at all, especially – Did you ask in the district court for an evidentiary hearing? Yes, we did. We asked in the district court and we asked in the state court. We always ask for an evidentiary hearing whenever there's a factual dispute like there is here. And, you know, I would ask the court, you know, to, you know, at the very least, send it back for an evidentiary hearing so Ms. Binder can try to give reasons for her failure to present a defense. This was a weak case. I mean, like Luna, there really – two of the witnesses that supposedly had made statements to the police recanted those statements on the stand. And one of the witnesses that counsel's investigator had interviewed, but for some reason I don't know why it was never pursued, said that he had, in fact, come by the house earlier and had apologized. Well, the mother has actually said this. The mother said that she came by the house – he came by the house. And I don't know if we even mentioned in our briefs, our Exhibit D shows, the other witness who recanted at trial had also previously come by the house and said, I lied to the police initially and I'm really sorry and I'll make it right at trial. Why those witnesses weren't caught, I don't know. Because those would have been prior consistent statements. They get on the stand and they testify, no, I really don't know who did it, and no, whatever I told the police was not true. And then they play the tapes that they – to take interviews with the police. But if, in fact, these two guys had then been able to – the mother had come in and said, you know, well, they previously apologized for having lied. I mean, without regard to the alibi portion of the mother's testimony, just that portion and the sister's testimony would have been very helpful because it would have rehabilitated those witnesses. So I can't see any reason Ms. Finder would have had for not calling them. And I would submit on that with that little bit of time for rebuttal, I hope. Okay. Respondent has no interest in holding this petitioner if counsel is, in fact, constitutionally ineffective, meaning both deficient in his performance, her performance, and prejudicial, prejudicially so. But at the same time, Your Honors, I think there's a competing concern here. To allege that a defense attorney is ineffective in a multiple murder case is a very to the system generally. And so I think it's important that we adhere very closely to the record in terms of what is alleged as ineffective and what's actually established. And from the Court's questions, I see we're discussing whether or not there should be a remand for an evidentiary hearing. And if I might focus on that for a minute, I would suggest that there's a difference between the need for remand and the threshold showing made by petitioner that would warrant an evidentiary hearing. And before we can really apply Strickland, we have to be sure that there's no possible reasonable explanation for counsel's conduct. Otherwise, the presumption, I believe, is with Respondent. Well, we're just surmising, aren't we? We are surmising, but I In fact, if I'm not mistaken, in the magistrate's report and recommendation, she basically kind of surmised. Absolutely. But I think that speaks to the issue of who has the burden of persuasion on the ineffectiveness claim. Well, he asked for a hearing in State court. Or he didn't ask for a hearing in State court. Or he did ask for a hearing in State court in this case.  But It was denied. Yes. But, Your Honor, the reason it was denied, I might submit, is that if petitioner doesn't get to the threshold of the need for an evidentiary hearing, there's no need to grant one. And what's missing from the showing here is Well, the House Supreme Court rarely grants an evidentiary hearing. Yeah, that's what I was going to ask. How many evidentiary hearings have been granted? I'm sorry. I thought the Court was referring to the District Court. Well, I started off with the State courts, yet, you know, there's a little bit of You're supposed to ask the State You're supposed to try and get a hearing in the State court, if it's possible. How many hearings did the State court grant on these habeas petitions? Your Honor, I don't know the number. I would allow the proportionately very few. More so in the District court, though. We do see them there. And I think the reason it was appropriate not to have one here is that More in the District court. Proportionately more, I think, are held in the District court compared to the highest State court. Well, you know, we did a lot of these. I've been making this speech for a long time. The reason that we, I think, that we get these State habeas petitions Is because the State court isn't doing its job. You see, they just put these little postcards on, and then it comes to us. And we don't have any postcards. We've got to go through this whole process. And because of that, we have a large cadre of magistrates That go through all these things. Go through all those records and all that. So it's kind of like full employment up here. But we're doing your job. And I remember one time I checked the District court downtown. So they get maybe 3,000 habeas petitions. And you know how many were granted? One. And Evel Younger would run around screaming all around town. You know, look what the feds are doing to us. Interfering with us. So that's why we have these. And I think if the State court system, and I was a Superior Court judge in the Municipal Court. And I think if they're a little more caretaken, that we wouldn't get all this business. Your Honor, I completely acknowledge what the Court is saying. And the only thing I might offer is that there is an intermediate level between this Court and Cal Supreme. And the District court did have the ability to hold the hearing. I would submit to the Court that the reason it didn't was because there wasn't an adequate showing under Strickland to warrant the hearing. What in your view is deficient in terms of the showing required for an evidentiary hearing, the threshold showing? I think, Your Honor, what was needed was a recognition by the District court that there was no other possible way for counsel to have handled this case. That there could be no conceivable reason why these witnesses were called. I think that while that's a fair issue, it's Petitioner's burden to make the showing. And all that's been said. She tried to talk. I mean, the only one who can tell us that is, I think, the lawyer, trial counsel. And counsel, you know, represented she tried to talk to her and, you know, without a subpoena. Well, I'm not surprised because, you know, there is this problem about attorney-client privilege in the waiver. So, you know, how is the Petitioner supposed to make that showing if you can't have an evidentiary hearing? Well, with all respect, Your Honor, the counsel's declaration says that she sent trial counsel a letter asking for a copy of the file. And that the file was provided. There's no indication in this declaration that trial counsel was sought or that her opinion was asked. Sometimes we see letters in the court file saying, counsel, will you please tell us why you did what you did. The answer, I think, Your Honor, to the question of why not just call these witnesses are twofold. And granted, I'm speculating. But the problem is to meet the Strickland test, there has to be no conceivable reason for counsel's conduct. Otherwise, it fails. And if I might suggest, too. Strickland test is not a test on whether you're entitled to an evidentiary hearing. Strickland test is whether you're entitled to relief or ineffective assistance. That's correct, Your Honor. But I think, you know, most of the questions that seem to come from the panel here as well. Why isn't this showing sufficient to, you know, to entitle the Petitioner to an evidentiary hearing? Well, I think, Your Honor, there are understandable reasons for counsel's conduct. I think the reason, counsel, defense counsel was facing a street gang enhancement, which under California law subjects the defendant to imprisonment for life without the possibility of parole for many years. It may be. Wasn't he facing that anyway? Well, as to the first degree murder count, that's correct, Your Honor. But, you know, on that point, I believe we're only here on the issue of count two and the subsequent counts. The count one murder of Sevilla is not contested in terms of ineffectiveness. And so if we look at it that way, the 25 years to life on count one may be before us in any event. But facing the street gang enhancement as she was, counsel may have decided that we've heard enough from gang witnesses in this case. I don't agree that there was no defense presented. I would grant that no alibi defense was presented. But it's for — Well, that's what the Petition's all about, is an alibi defense. Right. But we haven't heard from — well, I think the defense, based on the cross-examination of the gang witnesses who did testify, was that a murder happened, but Petitioner wasn't there, and I don't know anything about it. It's a little different from saying, I was home sleeping, I know where he was. The other reason that counsel may have been in a difficult position might be this. Counsel did interview the sister and the mother. We know this from the file. Suppose Petitioner said to trial counsel, you know, I've got people who will say that I was home sleeping. I've got my family friend, Jose Hernandez. I've got my mother. I've got my sister. But it's not true. I'm just saying this to save my neck. At that point, counsel's in a very difficult position. Ethically, she can't put her client on the stand or the witnesses. We're just speculating. We are. I would grant that. The state court could have had a hearing on this. Maybe it would have taken two hours, huh? And made its ruling. We'd have a record. And so we don't do that. And so it ends up we spend a lot of time. We have to go through all these files. Magistrates go through them. District judges go through them. Your office goes through them. So I bet if you add it all up, it's a lot more than two or three hours. Probably a hundred hours, maybe more. I agree that it does take a lot of time to run. But I think the specific allegations of counsel are not so demonstrably ineffective that an evidentiary hearing is warranted. There was an alibi. I had a case recently where the same thing came up. And there was an effective assistance of counsel. A murder case. And we granted the writ. And you know what happened? The state dropped the charges. Well, Luna was a similar case. I agree with counsel there. But I think the difference is that in that, and Judge Jashim was actually on that panel, but the state in that case conceded deficient performance. And as the district court found, it was a much weaker case for guilt. Well, you know, you just said about the, Mr. Senator, about the, what was presented at trial. It makes, it actually sharpens things for me a little bit, which was that there was testimony apparently that he wasn't there. By implication. That the witnesses who had given incriminatory reports to the police were called by the prosecution and they recanted to the effect of saying never saw him, never said it, barely know him, and that was pretty much it. So if his mother and sister had testified and somebody else had testified, yeah, at the time he was home, he was home asleep. Well. Would that be consistent with that? You know, plausible alibi defense? Wouldn't be inconsistent. But, you know, our jurisprudence says so much that we need to defer to counsel's judgment, absent showing of some deficient performance and that it's prejudicial. You know, I would, I think, feel differently, Your Honors, if these were witnesses who are not known to counsel. But the fact is counsel was present when the investigator interviewed the mother and sister. She was present when the names were revealed. And the declaration we have doesn't say that these witnesses weren't contacted or weren't interviewed. All Mr. Hernandez says is that I was available and willing to testify during the trial, but not asked to. He doesn't say that I wasn't interviewed or even subpoenaed. And so there are unquestionably some mysteries about this case. But what I would propose to the Court is that the burden is on Petitioner to do that. The report and recommendation, I guess, page 27 in the excerpt. But page 21 of the R&R, the paragraph starting on line 9, says because the record establishes that counsel interviewed the mother and sister and, now and, there is evidence that suggests counsel had good reason for not calling them as witnesses. What is that? Where is that evidence? What is the evidence? There is evidence that suggests that counsel had good reason for not calling them. What evidence is that? Your Honor, I took that to mean that it's contradictory with Jose Hernandez's testimony or proposed testimony. I think that's what the district court was referring to, that the mother's and sister's story was in conflict with what Hernandez now says he would have testified to on the issue of how Petitioner was discovered, allegedly, what noise was heard, where the discovery took place. That's... But on the page before, the Court says, the United States Judicial Court therefore presumes that trial counsel made an informed decision and then converts that decision into evidence and then the evidence into a finding. So it's all based on a presumption, isn't it? Well, I think at that point it is, Your Honor. But later in the R&R, the magistrate appears to contrast the Petitioner's sister's and mother's testimony with what was proposed by Hernandez. And that's what I understood the reference to be. I think, Your Honor, on the issue, just to close, of whether an evidentiary hearing was required, I think the reason the district court declined to have one was because the threshold for showing ineffectiveness or even suggesting it wasn't met, given who the witnesses were and the absence of a... of a propoundment that these witnesses truly were interviewed. I don't recall her addressing the need whether... for an evidentiary hearing or whether there was no need for an evidentiary hearing. The magistrate judge, Your Honor? I... She didn't directly. I think it was certainly before the Court in Petitioner's request. Okay. Thanks very much, Your Honor. Just briefly, Artis, I hope there isn't anything deficient in my personal declaration that would deny my client a hearing, because that certainly wasn't my intention. It's incredibly difficult to reconstruct these cases a long time later and try to do what trial counsel perhaps should have done. And absent an evidentiary hearing, it's very hard for us to... we have no subpoena power at the state or federal level, really. No way to really conduct discovery. And my understanding... You know, you can't go in under the federal rules for habeas proceedings under 2254 and ask for discovery. You can ask for it to take a deposition. You can ask, you know, there's all kinds of things you can do. And you can ask for an evidentiary hearing to put them on. We did ask for the evidentiary hearing. We did not make any discovery. We did make efforts on our own to try to find some of these people. And we did find Mr. Hernandez. And if Mr. Hernandez was inconsistent with the mother, which I don't really think he was, even though he'd been drinking and might not have had the same memory as the mother who hadn't been drinking, she didn't put an andes on either. So it wasn't a question of her making the choice because they were inconsistent. My understanding in California and interpretation of Strickland and Pope, people through Pope, no conceivable explanation is the standard on appeal. But on habeas where, you know, you have an opportunity to inquire into the reason, counsel can give reasons. And I, you know, I have had habeas petitions where opposing counsel has also got a hold of the state counsel and they've given declarations that really hurt me. So in this case, I really hope that the absence of a declaration from counsel I really hope that the court will consider letting us have our evidentiary hearing. Thanks. The matter will stand submitted. Now we come to
judges: Pregerson, Tashima, Paez